IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 2:06-00044

CALVIN BUTLER

MEMORANDUM OPINION AND ORDER

Pending is Defendant Calvin Butler's Motion to Reduce or Modify Sentence Pursuant to Compassionate Release, 18 U.S.C. § 3582(c)(1)(A). ECF No. 205. The Defendant filed his motion on July 25, 2022. The Court directed the United States to file a response, ECF No. 206, which it filed under seal on August 8, 2022. ECF No. 209. Following approved Motions to Extend Time to Reply, the Defendant timely replied on October 20, 2022. ECF No. 216. The Court has carefully reviewed the Motion, Response, Reply, and the Defendant's medical records. For the reasoning provided herein, the Court **DENIES** the Motion.

I. APPLICABLE LAW

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended Section 3582 and enabled courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. However, before defendants may request such a reduction, defendants must ask the BOP to do so on their

1

behalf. *See* 18 U.S.C. § 3582(c)(1)(A). If the BOP denies the defendant's request or does not respond within 30 days, the defendant may file a motion before the court. *Id*.

If an inmate satisfies this administrative exhaustion requirement, courts may reduce the inmate's sentence if there are (1) "extraordinary and compelling reasons," (2) the defendant is "no longer a danger to the safety of any other person or to the community," and (3) release is consistent with the factors identified under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c); U.S.S.G § 1B1.13 (2018). In response to the COVID-19 pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *U.S. v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. Apr. 10, 2020) (collecting cases).

## II. ANALYSIS

As a preliminary matter, the Court finds that Defendant has properly exhausted his administrative remedies. The Warden at his facility, FMC Butner Low, denied his request for compassionate release on May 10, 2022. Mot. 4 & Ex. A-1. Accordingly, the Court turns to the merits of Defendant's motion.

### A. Extraordinary and Compelling Reasons

In his motion, Defendant states that he suffers from a variety of ailments, including hypertension, obesity, "chronic kidney disease – stage three/four," gout, degenerative arthritis, and heart disease. *Id*. at 7. He argues that these conditions make him "especially susceptible to COVID-19 current variants."[1] *Id.* at 2.

---

[1] Mr. Butler also makes a variety of arguments concerning his medical treatment and the ways in which BOP has evaluated and recorded his rehabilitative efforts. Mot. 13, 18-19. To the extent these arguments concerning his medical treatment are relevant to the Court in evaluating his Motion, they are addressed below. The arguments concerning

2

Defendant is 49 years old and therefore is not in the age-related high-risk category for the virus. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 26, 2022) (emphasizing increased risk after age 65). Despite his age, however, Defendant has numerous diagnoses. His medical records confirm that he has chronic kidney disease, hypertension, obesity, and other health problems. *See* Records, Ex. C, ECF No. 212.

While the Court recognizes that the Defendant has a serious medical condition which requires active monitoring and treatment, it finds that he is housed a medical facility where the Bureau of Prisons has effectively managed his care. Despite Mr. Butler's contentions, the Government has sufficiently demonstrated that FMC Butner has the ability to care for a prisoner with Defendant's diagnoses. *See* Reply 14, ECF No. 216; Resp. to Mot. 12-13, Ex. C, ECF No. 209. Having reviewed the medical records provided by the Government, the Court finds that Mr. Butler's renal disease and other medical conditions are being actively treated and carefully observed. Mr. Butler is receiving regular monitoring of his kidney disease via blood work and is prescribed multiple medications for his illnesses. He has not had an episode of acute distress; his renal function remains stable; and the medical providers at his facility have recognized that he will eventually require dialysis but that the medications he is currently taking are sufficient to address his renal disease. Resp. to Mot., Ex. C. In fact, the stated reason for denying Mr. Butler's recent transfer request was the inability of the requested facility to provide adequate medical care, in comparison to FMC Butner's facilities. Mot., Ex. D. Additionally, FMC Butner has previously demonstrated before this Court the ability to provide inmates with dialysis, should Mr. Butler's

---

BOP's evaluation of his rehabilitation have been considered but deemed ultimately irrelevant.

3

renal failure ever necessitate such advanced treatment. *See United States v. Brown*, Case No. 3:16-cr-00092-1, Dkt. Nos. 533 & 534 (S.D.W. Va. 2022).

Furthermore, the rates of COVID-19 at FMC Butner Low are no longer high and have not worsened over time. Defendant is correct that FMC Butner as a complex had an atrocious early pandemic record in terms of COVID-19 cases, deaths, and compliance with federal COVID-19 guidance in comparison to other BOP facilities. *See Pandemic Response Report: Remote Inspection of Federal Correctional Complex Butner*, Department of Justice Office of the Inspector General, Jan. 2021, https://oig.justice.gov/sites/default/files/reports/21-031.pdf (last visited Oct. 27, 2022). However, currently, the BOP is reporting that FMC Butner Low only has 1 staff member with a confirmed positive case, and no positive inmates. *COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 26, 2022). Reporting shows that 1,014 inmates at FMC Butner as a complex have recovered from the virus throughout the entirety of the pandemic, and 39 deaths have been reported. *Facility-Level BOP COVID-19 Trends*, Dept. of Justice Office of the Inspector General, https://experience.arcgis.com/experience/ab22fb4c564e4f4b986e257c685190e8/page/Case-Trends/ (last visited Oct. 27, 2022). The Court is cognizant of Defendant's well-plead arguments concerning the potential underreporting of COVID-19 cases at the facility.[2] Mot. 4-6; Reply 7, 17-19. However, the Court finds no evidence to support any assertion of a mass cover-up of COVID-19 cases at FMC Butner, such as would warrant a conclusion of urgent risk to Defendant.

---

[2] Indeed, some of Mr. Butler's allegations concerning management of COVID-19 at FMC Butner Low are very disturbing. Defendant alleges that the prison refuses to test inmates for COVID-19, places inmates who test positive in disciplinary solitary confinement, and does not follow federal guidelines and mandates. Mot. 5-6. The Court takes such allegations seriously. However, as discussed in this Memorandum Opinion, the COVID-19 related mismanagement at the facility is insufficient to rise to a level warranted compassionate release for Mr. Butler, given his personal medical and criminal history.

The Court does not wish to downplay the severity of Defendant's condition or the susceptibility he may have to COVID-19, despite his vaccination.[3] Unfortunately, however, the Court finds that Defendant would still be at risk of COVID-19 contraction if he were released from custody. Given his need for medical care, he would have to travel to and be in medical offices, unable to strictly self-isolate. Defendant is exposed to significant risk wherever he resides. Consequently, the Court finds that the Defendant has not shown extraordinary and compelling circumstances that warrant release.

B. Section 3553(a) Factors

The Court finds that release is not appropriate under § 3582(c)(1)(A). In order to grant relief, the Court must conclude that the Defendant is "no longer a danger to the safety of any other person or to the community" and that his release is consistent with the factors identified under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c).[4] Upon a review of the Defendant's Motion, the United States' Response, Defendant's Reply, the Presentence Reports ("PSR") that were prepared for Defendant's sentencing in his two related cases, and the record concerning the revocation of his supervised release, the Court finds that release would not be consistent with the factors listed in § 3553(a).

---

[3] The Government argues at length that Mr. Butler's two doses of the Pfizer vaccination for COVID-19 render the risk to him of contracting COVID-19 minimal. Resp. to Mot. 9-11. The Court finds this argument to be misplaced. The cases cited by the Government concerning the low risk of contracting COVID-19 post-vaccination were all decided in the Spring of 2021, before consensus had been reached that so-called "breakthrough infections" were to be expected. *See id.* (citing nine cases from this time frame); *COVID-19 Vaccine Effectiveness Monthly Update*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness (last visited Oct. 27, 2022) (showing vaccine effectiveness at preventing infection varying between 16-87%, depending on age group, vaccine administered, and length of time from vaccination). However, the Court is cognizant of the fact that vaccination lowers the risk of serious illness and death. *See COVID-19 Vaccines are Effective*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/index.html (last visited Oct. 27, 2022).

[4] Because the Court finds that release would not be consistent with the factors of § 3553(a), the Court does not address whether Defendant is a danger to the safety of others or the community.

Defendant originally pled guilty to Possession of a Firearm During the Commission of a Drug Trafficking Crime, 18 U.S.C. § 924(c)(1)(A) and Possession with Intent to Distribute Five Grams or More of Cocaine Base, 21 U.S.C. § 841(a)(1) on August 28, 2006. *See* ECF Nos. 82 & 83. Mr. Butler was accordingly sentenced to 168 months imprisonment, followed by 60 months of supervised release, and a $2,000 fine. Sentencing, ECF No. 106. On May 20, 2008, his sentence was reduced to 147 months. ECF No. 131. On December 20, 2011, Mr. Butler's sentence was further reduced to 130 months imprisonment. ECF No. 151. Both reductions were granted due to retroactive lowering of sentencing guidelines for Mr. Butler's convictions. *See* ECF Nos. 122 & 151. According, Mr. Butler was released on September 5, 2015. ECF No. 165.

Unfortunately, on January 7, 2019, his supervised release was revoked after he was arrested following a controlled buy of methamphetamines and subsequent search of his residence, in which officers found approximately 368 grams of that controlled substance. ECF No. 181. Simultaneously, Mr. Butler was separately convicted of a second § 841(a)(1) offense stemming from this controlled buy. *United States v. Butler*, Case No. 2:18-cr-00176, Dkt. No. 16 (S.D.W. Va. 2018). This Court imposed a 24-month term of imprisonment as a result of the supervised release violation and a 65-month term of imprisonment with six years of supervised release for the new conviction, to run consecutively. *Id*.; ECF No. 181.

The PSR indicates that Mr. Butler's original convictions were the result of his attempts to evade law enforcement. PSR ¶ 10, ECF No. 200. His more recent conviction involved multiple controlled buys, thousands of dollars of likely drug trafficking currency, and at least two different controlled substances. *Butler*, PSR, Dkt. No. 19. Only approximately seven months had elapsed between Defendant's release from prison and the first controlled buy conducted by law enforcement. *See id*. ¶ 14. The details surrounding that investigation and incident highly suggest

Mr. Butler was engaged in further drug trafficking activities within half a year of his release. *See id*. After a three-point reduction for acceptance of responsibility, Defendant had a final offense level of 23 and a United States Sentencing Guideline Range of 57 to 71 months for his most recent conviction. *Id*. at ¶ 96.

To date, the Defendant has only served approximately 63% of his full term.[5] Resp. to Mot., Ex. A. During his periods of incarceration, Mr. Butler has been sanctioned at least fifteen times for misconduct, including misconduct implicating and involving violent behavior. *Id*. at Ex. B. The Court concludes that releasing the Defendant now would undermine § 3553(a)(2), as the Defendant's time served would not reflect the seriousness of the offense the Defendant committed, promote respect for the law, or provide just punishment for the Defendant's offense. *See* 18 U.S.C. §3553(a)(2).

ENTER:   October 28, 2022

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[5] Mr. Butler repeatedly indicates that he has served approximately 75-85% of his term. Mot. 10; Reply 22. This appears to be inaccurate, given his total sentence of 89 months.